IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN G. SEEK,                         6:13-cv-00023-BR

         Plaintiff,                    OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

         Defendant.


DREW L. JOHNSON
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97405
(541) 434-6466

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**JOHN E. HAAPALA, JR.**
401 E. 10th Avenue
Suite 240
Eugene, OR 97401
(541) 345-8474

      Attorneys for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**NANCY A. MISHALAINE**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3619

      Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Karen G. Seek seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) payments under Title XVI.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough review of the record, the Court **AFFIRMS** the Commissioner's final

2 - OPINION AND ORDER

decision and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed her applications for DIB and SSI on
October 22, 2009.  Tr. 10.  The applications were denied
initially and on reconsideration.  An Administrative Law Judge
(ALJ) held a hearing on October 10, 2011.  Tr. 10.  At the
hearing Plaintiff was represented by an attorney.  Plaintiff and
a vocational expert (VE) testified at the hearing.  Tr. 10.

The ALJ issued a decision on January 26, 2012, in which he
found Plaintiff is not entitled to benefits.  Tr. 35.  That
decision became the final decision of the Commissioner on
November 8, 2012, when the Appeals Council denied Plaintiff's
request for review.  Tr. 1.

Plaintiff previously applied in July 2006 for Title II and
Title XVI benefits, which were denied initially that month.
Tr. 10.  Plaintiff did not appeal these decisions.  Tr. 10.  The
ALJ noted:  "By alleging an onset date within the period
previously adjudicated, the claimant has made an implied request
to reopen those applications."  Tr. 10.  The ALJ, however,
declined to reopen the prior unfavorable determinations because
(1) Plaintiff's current Title XVI application was not filed until
2011, more than two years after her prior application was
initially denied, and (2) because the ALJ found Plaintiff was not

disabled at any point since the alleged onset date.  Tr. 11.


## BACKGROUND

Plaintiff was born on May 26, 1969, and was 42 years old at the time of the hearing.  Tr. 243.  Plaintiff completed two terms of community college.  Tr. 74-75.  Plaintiff has prior relevant work experience as a custodian, "cook/cashier," and landscape worker.  Tr. 262.

Plaintiff alleges disability since October 31, 2005, due to fibromyalgia, restless-leg syndrome, inability to hold things in her hand, post-traumatic stress disorder, bipolar disorder, and sleep apnea.  Tr. 67.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 10-35.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for

4 - OPINION AND ORDER

a continuous period of not less than 12 months." 42 U.S.C.
§ 423(d)(1)(A). The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec.
Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial
evidence is "relevant evidence that a reasonable mind might
accept as adequate to support a conclusion." *Molina*, 674 F.3d.
at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574
F.3d 685, 690 (9th Cir. 2009)). It is more than a "mere
scintilla" of evidence but less than a preponderance. *Id.*
(citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even
when the evidence is susceptible to more than one rational

interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

<u>**DISABILITY ANALYSIS**</u>

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific

work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since October 31, 2005, her alleged onset date.  Tr. 13.

8 - OPINION AND ORDER

At Step Two the ALJ found Plaintiff has the severe impairments of fibromyalgia, obstructive sleep apnea, restless-leg syndrome, carpal-tunnel syndrome, disorders of the back, obesity, depression, anxiety, and a history of polysubstance abuse.  Tr. 14.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 14-15.  The ALJ found "with or without the effects of substance abuse, [Plaintiff] is able to lift and/or carry ten pounds frequently and twenty pounds occasionally; able to sit for about six hours during a normal eight-hour workday, with normal breaks; and, is able to stand and/or walk for about six hours during a normal eight-hour workday, with normal breaks. [Plaintiff] must be allowed a sit-stand option whereby [she] is allowed, at will, to alternate positions among sitting, standing, and walking, for comfort throughout the eight-hour workday, provided [Plaintiff] is not off-task more than 10% of the work period."  Tr. 15.  The ALJ found Plaintiff can frequently kneel, balance, crouch, bend, stoop, climb ramps and stairs.  The ALJ also found Plaintiff can occasionally climb ladders, ropes, or scaffolds and perform overhead reaching activities.  Tr. 15.  The ALJ found Plaintiff should not have "concentrated exposure to pulmonary irritants such as dust, fumes, odors, and gases"; Plaintiff should not be required to have "public contact . . .,

9 - OPINION AND ORDER

but such work may involve working with individuals on a one-on-one basis"; and Plaintiff should not have "more than occasional interaction with coworkers, or more than frequent interaction with supervisors." Tr. 15.  The ALJ also found Plaintiff's work "must consist of one-, two-, or three-step tasks that are either unskilled in nature or at the lower, entry-level end of semi-skilled work; and, such work may require only relatively simple work-related decision making."  Tr. 15.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy such as garment sorter/pricer (retail), linen folder, and hand bander (medical supplies).  Tr. 35.  Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 35.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected the opinion of examining physician Christopher Komanapalli, M.D.; (2) improperly rejected the opinion of examining psychologist Julie A. Evans, Ph.D.; (3) improperly discredited Plaintiff's testimony; and (4) provided an improper hypothetical to the VE.

## I.  Medical Evidence

Plaintiff contends the ALJ erred when he rejected the opinions of examining physician Dr. Komanapalli and examining

psychologist Dr. Evans.

### A.    Standards

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  Generally the more consistent an opinion is with the record as a whole, the more weight an opinion should be given.  20 C.F.R. § 416.927(c)(4).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec.*

*Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

### B.  Opinion of Dr. Komanapalli

Dr. Komanapalli performed a medical evaluation of Plaintiff on June 17, 2006.  Tr. 263.  Dr. Komonapalli's review of Plaintiff's medical records consisted of (1) "a note from a nurse practitioner, Ginger Taylor dated February 7, 2006"; (2) "a note from Dr. Samuel Kaye dated February 21, 2006 and January 24, 2006"; and (3) "a note from the Rheumatology Group at Albany Medical Center dated January 24, 2006."  Tr. 263.

Dr. Komanapalli met with Plaintiff for approximately 30 minutes.  Tr. 263.  Dr. Komanapalli noted Plaintiff "describes her current abilities to walk for approximately an hour, to stand for no more than 20 minutes, and to sit for no more than 20-30 minutes."  Tr. 264.  Plaintiff told Dr. Komanapalli that even though she can clean her home, she occasionally needs assistance from her daughter with "toileting and bathing."  Tr. 264.

Dr. Komanapalli observed Plaintiff was "a well-dressed claimant in no acute distress," "emotionally stable," "nondisheveled", and "easily able to transfer between the chair and the exam table."  Tr. 265.  Dr. Komanapalli noted, however, Plaintiff "does not sit comfortably in either the chair or exam table due to back pain."  Tr. 265.

Dr. Komanapalli observed Plaintiff's ability to perform straight-leg raises was limited due to muscular strength rather than joint movement.  Tr. 266.  Dr. Komanapalli's noted Plaintiff did not have "paravertebral muscle spasms, tenderness, crepitus, effusions, deformities, or trigger points elicited."  Tr. 267.

Dr. Komanapalli diagnosed Plaintiff with fibromyalgia and chronic back pain based on his review of the three records cited above.  Tr. 267.  Dr. Komanapalli provided a functional assessment of Plaintiff and concluded she cannot sit or stand for more than two hours; cannot lift or carry more than 10-15 pounds; cannot stoop, crouch, or kneel because she cannot get back up; and her reaching ability is limited because it "pulls on her lower back."  Tr. 267-68.

The ALJ gave little weight to Dr. Komanapalli's opinion on the grounds that it was "based on a one-time, 30 minute evaluation, with few background records available, and specifically relies on the claimant's own self-description of he symptoms and limitations.  His actual examination was almost entirely normal, and provided little basis to assign any limitations on [Plaintiff], much less the severe restrictions he does impose."  Tr. 33.

The Court notes the three medical records reviewed by Dr. Komanapalli were not included in the current record that was before the ALJ.  Plaintiff contends these records support

Dr. Komanapalli's opinion because they establish Plaintiff's impairments of fibromyalgia and chronic lower back pain; these impairments were included in the record of her prior SSI and DIB applications; and, accordingly, the Commissioner had a duty to retain these records.  At the hearing, however, the ALJ asked Plaintiff's counsel on two separate occasions whether Plaintiff had anything to add to the record, and each time Plaintiff's counsel responded he had nothing to add.  Tr. 59, 110.  As noted, the initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  Accordingly, it was Plaintiff's duty to provide these records as part of her *current* applications or, at the very least, to alert the ALJ of these records when prompted at the hearing.

Plaintiff contends the missing records establish she has the impairments of fibromyalgia and chronic back pain.  As noted, the ALJ resolved Step Two in Plaintiff's favor and included fibromyalgia and "disorders of the back" as severe impairments. Although the ALJ did not specifically include "chronic back pain" as a severe impairment, any failure on the part of the Commissioner to obtain documents that would support such a finding is harmless error.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step

Two was resolved in claimant's favor).

The Court concludes on this record that the ALJ did not err when he rejected Dr. Komanapalli's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**C.    Opinion of Dr. Evans**

On August 25, 2009, Dr. Evans performed an initial assessment of Plaintiff at Linn County Mental Health Services. Tr. 312.  Plaintiff complained of depression and anxiety. Tr. 312.  Dr. Evans observed Plaintiff was neat, clean, and appropriately dressed and groomed.  Tr. 312.  Although Dr. Evans noted Plaintiff was of average intelligence, her affect was primarily appropriate, and she was cooperative, she also noted Plaintiff was anxious and tearful.  Tr. 312.  Dr. Evans found Plaintiff's speech was normal, logical, and coherent, and her thought process was normal.  Tr. 313.  Dr. Evans also found Plaintiff was oriented, her insight and judgment were fair, but her recent memory was impaired.  Tr. 313.  Dr. Evans noted Plaintiff previously attempted suicide.  Tr. 314.  Dr. Evans gave Plaintiff Axis I diagnoses of PTSD and Major Depressive Disorder, Recurrent, Mild; Axis II diagnoses of fibromyalgia and arthritis; and an Axis V diagnosis/GAF[2] score of 44.

_____

[2]  A Global Assessment of Functioning (GAF) score rates a person's psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness.  *See* DSM-1V at

Plaintiff asserts the ALJ erred when he disregarded Dr. Evans's opinion as to Plaintiff having a GAF of 44, which Plaintiff contends is an indication that she cannot sustain work.

The ALJ gave Dr. Evans's report "some but not significant weight." Tr. 32. The ALJ discounted Dr. Evans's report in part on the grounds that (1) her diagnoses of Plaintiff's impairments of PTSD, major depressive disorder, and GAF "came after a single interview in which Dr. Evans made few mental status tests or observations, and for which Dr. Evans had little other medical evidence to rely on besides the claimant's own statements"; (2) Plaintiff's overall mental history indicates overall control of symptoms; (3) at the time of Dr. Evans's evaluation, Plaintiff was under several situational stressors as opposed to clinical factors; and (4) Dr. Evans did not indicate the extent to which she incorporated the issue of Plaintiff's substance abuse into her evaluation of GAF. Tr. 32.

The ALJ found Plaintiff performed activities of daily living with only mild restrictions and concluded those activities reflected Plaintiff's actual capabilities. Furthermore, the ALJ concluded Plaintiff was capable of vocational functioning despite her substance-abuse impairment. Tr. 31. The ALJ also relied on the opinion of treating nurse practitioner Janet Eggers, P.M.H.N.P., who initially gave Plaintiff a GAF of 45, but later

───────────────

34.

increased it to 50 and then again to 55 after establishing a treating relationship with Plaintiff.  Tr. 33, 421, 424, 429. The ALJ also noted treating registered nurse Ben Newman, R.N., opined Plaintiff's lower GAF score of 47 "was to be expected" when Plaintiff did not use her medications, but this low score did not represent Plaintiff's longer-term condition.  Tr. 33, 436.

The ALJ also noted even though Plaintiff showed some impairment in memory and calculation at the time that Plaintiff was examined by Dr. Evans, Plaintiff's "mental and physical providers repeatedly state that she has intact memory or concentration."  Tr. 31.

The Court concludes on this record that the ALJ did not err when he discounted the opinion of Dr. Evans with respect to Plaintiff's GAF because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## II. **Plaintiff's Testimony**

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for rejecting Plaintiff's testimony as to the limitations of her alleged impairments.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence

of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra,* 481 F.3d at 750 (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified she is unable to work full time because her impairments of fibromyalgia, restless-leg syndrome, problems with her hands, and her mental condition make her unreliable. Tr. 67. She testified her PTSD and restless-leg syndrome make her tired, and she sleeps all the time. Tr. 67. Plaintiff testified she has been addicted to marijuana since the age of 9, uses it weekly, and is attempting to get a medical marijuana card. Tr. 67. 68, 70. Plaintiff lives with and cares for a 76 year-old man. Tr. 71-72. Plaintiff goes for walks with

him and "keeps an eye on him," but she does not cook or clean for him. Tr. 71-72. Plaintiff testified her daily activities consist of taking her fifteen-year-old daughter to school, driving home and going back to bed, watching television, doing chores, washing clothes, cooking simple meals, and taking care of her dogs. Tr. 77-80. She also stated, however, that when her pain is bad, laying flat on her back for seven to eight hours a day helps the most. Tr. 64. Plaintiff stated she grocery shops approximately once per month between 3 a.m. and 5 a.m. because she does not do well in crowds. Tr. 85. Nevertheless, Plaintiff testified she generally gets along with people well and has friends she visits occasionally. Tr. 85-86. In 2010 Plaintiff attended community college for two terms and received good grades, including an "A" in a reading course. Tr. 74-75. Plaintiff testified she has sleep apnea and has been prescribed a Continuous Positive Airway Pressure (CPAP) machine, but she does not use it because she has a habit of taking it off at night. Tr. 85.

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but he concluded Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms are not credible "to the extent they are inconsistent with the [RFC]." Tr. 33. The ALJ also discredited

Plaintiff's testimony because "[i]n addition to somewhat modest objective findings, indications in the record of positive response to treatment but lack of compliance with the same treatment; and her level of activity despite her alleged symptoms, the claimant's overall credibility is diminished by her minimization of a substantial history of substance abuse including continuing marijuana abuse." Tr. 33.

As noted by the ALJ, in 2009 Plaintiff had a good response to the CPAP for her sleep apnea and taking 600mg of gabapentin had a "beneficial impact" on her restless leg syndrome. Tr. 354, 362. Medication also appears to help Plaintiff's depression, which is worse when she does not take it. For example, in June 2011 when Plaintiff reported being more depressed, Nurse Newman noted he was not surprised as Plaintiff was not taking her medication. Tr. 436.

The ALJ also noted the medical record shows Plaintiff's pain symptoms are controllable with prescribed medications. For example, in 2007 Plaintiff reported to treating nurse practitioner Deider Green, A.N.P., on numerous occasions that Ultram was helpful for her pain. Tr. 559, 561. In March 2008 Nurse Green noted Plaintiff's pain was controlled with Ultram. Tr. 544. Plaintiff also testified at the hearing that Tramadol was helpful for her fibromyalgia pain. Tr. 25, 63.

The ALJ also noted Plaintiff's activity level, which

includes attending two terms of community college, cooking, cleaning, short periods of employment in 2006 and 2009, visiting friends, and acting as a care-giver is not consistent with her alleged physical and mental limitations.  Tr. 29.

In addition, the ALJ concluded Plaintiff does not need specific accommodation as a result of her substance abuse because she has engaged in such activity even during periods when she performed substantial gainful activities, which indicates she is capable of vocational functioning in any event.  Tr. 31.

On this record the Court concludes the ALJ did not err when he found Plaintiff's testimony was not entirely credible as to the intensity, persistence, and limiting effects of her alleged impairments because the ALJ provided legally sufficient reasons for doing so.

**IV.  The ALJ's hypothetical to the VE was complete.**

Plaintiff contends the ALJ's hypothetical to the VE was inadequate because it did not contain all of Plaintiff's alleged limitations.  The Court already found the ALJ did not err when he discounted the opinions of Drs. Komanapalli and Evans and found Plaintiff not to be credible as to her limitations.  On this record, therefore, the Court concludes the ALJ's hypothetical to the VE was not inadequate.

**<u>CONCLUSION</u>**

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 9th day of January, 2014.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge